IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| EDWARD DIPPLE *et al.*, | : | |
| Plaintiffs, | : | |
| v. | : | CIVIL ACTION NO. 12-1415 |
| MICHAEL R. ODELL *et al.*, | : | |
| Defendants. | : | |

**MEMORANDUM**

YOHN, J.                                                                                                    May 2, 2012

Plaintiffs have filed a motion to expedite discovery and defendants have filed a response

thereto. For the reasons set forth below, I will deny plaintiffs' motion.

**I.     Background**

This case arises out of an offer by The Gores Group, LLC ("Gores"), a private-equity

firm, to acquire all the outstanding shares of common stock of The Pep Boys - Manny, Moe &

Jack ("Pep Boys" or the "Company") for $15.00 per share, at a total enterprise value of

approximately $1.0 billion (the "Proposed Transaction"). (Consolidated Compl. ¶ 2.) Following

the announcement of the Proposed Transaction, ten actions alleging breach of fiduciary duties

were filed by Pep Boys shareholders in the Court of Common Pleas of Philadelphia County.

These state-court actions have been consolidated before Judge Arnold L. New, and discovery has

commenced.[1] (Pls.' Mem. in Supp. of Mot. for Expedited Disc. ("Pls.' Mem.") at 2-3; Defs.'
Opp'n to Pls.' Mot. for Expedited Disc. ("Defs.' Opp'n") at 2-3.)

On March 7, 2012, Pep Boys filed its first preliminary proxy ("March 7th Proxy") with
the U.S. Securities and Exchange Commission ("SEC") recommending that Pep Boys
shareholders vote in favor of the Proposed Transaction. (Consolidated Compl. ¶ 57.) The
document is 88 pages long. (Defs.' Opp'n at 2.) Plaintiff Edward Dipple filed this securities
action against defendants, Pep Boys and the members of the Company's board of directors[2] (the
"Board"), on March 20, 2012. Subsequently, plaintiffs Linda Dickens and John Chevedden filed
similar actions that were consolidated before me. Pep Boys filed an amended preliminary proxy
("April 6th Proxy") that is 89 pages in length with the SEC on April 6, 2012.[3] (Pls.' Mem. at 2;
Defs.' Opp'n at 3 n.1.)

Plaintiffs filed a consolidated complaint dated April 10, 2012. In the consolidated
complaint, plaintiffs contend that both the value of the Proposed Transaction to Pep Boys
shareholders and the process by which the Board approved the Proposed Transaction are unfair.
(Consolidated Compl. ¶ 43.) Plaintiffs allege that defendants prepared, filed, and disseminated a
false and misleading proxy statement in violation of sections 14(a) and 20(a) of the Securities

---

[1] Plaintiffs Edward Dipple and John Chevedden were initially involved in the state-court
litigation but withdrew in order to pursue their federal claims before this court instead.

[2] The board members who are defendants in this action are Michael R. Odell, Robert H.
Hotz, Irvin D. Reid, James A. Mitarotonda, John T. Sweetwood, James A. Williams, Jane
Scaccetti, M. Shan Atkins, and Nick White.

[3] Although plaintiffs' consolidated complaint does not appear to address the April 6th
Proxy, plaintiffs' brief argues that "the April 6th Proxy is largely the same as the March 7th
Proxy with limited additional disclosures. . . . [And both] Proxies remain false and misleading."
(Pls.' Mem. at 2.)

Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder. (*Id.* at ¶¶ 91-93, 99.) Defendants filed a motion to dismiss the consolidated complaint on April 17, 2012, which is awaiting further briefing.

Plaintiffs filed this motion to expedite discovery in order to facilitate their anticipated motion for a preliminary injunction enjoining defendants from convening a shareholder meeting scheduled for May 30, 2012, where a vote on the Proposed Transaction will take place. Plaintiffs seek to depose a member of Pep Boys' Board, management, and financial advisor. Plaintiffs also request eight categories of documents. Defendants argue that these requests are little more than a "fishing expedition" and oppose the motion on the ground that all discovery must be stayed pending resolution of their motion to dismiss under the Private Securities Litigation Reform Act of 1995 ("PSLRA").

## II.   Analysis

In securities-fraud actions, the PSLRA provides that "all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss." 15 U.S.C. § 78u-4(b)(3)(B). Contrary to plaintiffs' contention, a substantial body of law exists supporting the conclusion that the automatic-stay provision of the PSLRA applies to federal securities claims brought individually in addition to claims brought collectively, *see Nichting v. DPL Inc.*, No. 3:11-141, 2011 U.S. Dist. LEXIS 76739, at *6 n.5 (S.D. Ohio July 15, 2011) (collecting cases that reject the argument that the PSLRA automatic stay applies only to class actions), and at least one other court in this circuit has applied the automatic-stay provision accordingly, *see Botton v. Ness Techs., Inc.*, No. 11-3950, 2011 U.S. Dist. LEXIS 85950, at *6-8 (D.N.J. Aug. 4, 2011) (applying the PSLRA stay provision to federal securities claims brought individually). The automatic-stay

provision applies to "any private action." 15 U.S.C. § 78u-4(b)(3)(B). By contrast, other

subsections of 15 U.S.C. § 78u-4 apply to claims "brought as a plaintiff class action." 5 U.S.C

§ 78u-4(a). Congress knew how to limit the application of the PSLRA to class actions only—it

chose not to limit the automatic-stay provision in this manner.

The PSLRA prohibits discovery in this action "unless the court finds upon the motion of

any party that particularized discovery is necessary to preserve evidence or to prevent undue

prejudice to that party." 15 U.S.C. § 78u-4(b)(3)(B). Plaintiffs do not argue that a reprieve from

the stay is necessary to preserve evidence. Instead, they argue that the stay should be lifted

because it would not serve congressional purposes in this case, or alternatively, because their

discovery requests are particularized and necessary to prevent undue prejudice.

"Congress enacted the discovery stay in order to minimize the incentives for plaintiffs to

file frivolous securities . . . actions in the hope either that corporate defendants will settle those

actions rather than bear the high cost of discovery . . . or that the plaintiff will find during

discovery some sustainable claim not alleged in the complaint." *In re Worldcom Sec. Litig.*, 234

F. Supp. 2d 301, 305 (S.D.N.Y. 2002) (internal citations omitted). Plaintiffs argue that "[w]here

these concerns do not exist, courts have lifted the stay of discovery." (Pls.' Mem. at 14.) The

cases plaintiffs rely on are inapposite.[4] Instead, I adopt the reasoning of *In re Marvell Tech.*

---

[4] Plaintiffs' citation to *Tobias Holdings, Inc. v. Bank United Corp.*, 177 F. Supp. 2d 162 (S.D.N.Y. 2001), is unavailing. In *Tobias*, the court addressed only "[t]he narrow question . . . whether the PSLRA stays discovery with respect to plaintiff's non-fraud state law claims where jurisdiction over such claims is based on diversity of citizenship." *Id.* at 164-65. The case bears little resemblance to the matter before me. And although the court in *Worldcom* did note that lifting the automatic stay in that case would not contravene the rationale underlying the PSLRA, the court held that the plaintiffs had made a showing of undue prejudice under the statute because the defendant had filed for bankruptcy and plaintiffs "face[] the very real risk that [they] will be left to pursue [their] action against defendants who no longer have anything." 234 F. Supp. 2d at

*Group Ltd. Derivative Litig.*, No. 06-03894, 2007 U.S. Dist. LEXIS 41268, at *7-8 (N.D. Cal.

May 29, 2007), that "Congress specified a stay for all privately-prosecuted Exchange Act cases

and made exceptions for evidence [preservation] and undue prejudice. Congress did not merely

instruct courts to stay discovery in cases in which courts perceived abuses."[5] *See also In re*

*Spectranetics Corp. Sec. Litig.*, No. 08-02048, 2009 U.S. Dist. LEXIS 100748, at *22 (D. Colo.

Oct. 14, 2009) ("[A] securities plaintiff cannot rely upon PSLRA policy alone to overcome its

failure to meet the strict statutory requirements of the exceptions to the discovery stay.").

      Under the PSLRA, the automatic stay may be lifted in "extraordinary circumstances"

where the plaintiff can show that particularized discovery is necessary to prevent undue

prejudice. *Winer Family Trust v. Queen*, No. 03-4318, 2004 U.S. Dist. LEXIS 1825, at *5 (E.D.

Pa. Feb. 6, 2004). Although "the concept of particularized discovery is a nebulous one, and the

phrase is not devoid of ambiguity," *Faulkner v. Verizon Communs., Inc.*, 156 F. Supp. 2d 384,

405 (S.D.N.Y. 2001) (internal quotations omitted), "[a] discovery request is particularized within

the meaning of 15 U.S.C. § 78u-4(b)(3)(B) if the party seeking discovery under the exception . . .

adequately specif[ies] the target of the requested discovery," *Nichting*, 2011 U.S. Dist. LEXIS

76739, at *10 (internal quotations omitted). In other words, "[d]iscovery is sufficiently

particularized when it is directed at specific persons and sufficiently limits the type of documents

to be preserved." *In re Heckmann Corp. Sec. Litig.*, No. 10-378-LPS, 2010 U.S. Dist. LEXIS

141663, at *15 (D. Del. Feb. 28, 2010). Thus, whether discovery requests are "particularized"

---

305-06.

    [5] The fact that plaintiffs have not yet filed a motion for a preliminary injunction suggests
that the latter factor may be in play, a result which Congress sought to prohibit.

depends upon "the nature of the underlying litigation." *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 220 F.R.D. 246, 250 (D. Md. 2004).

Here, plaintiffs request the following discovery:

[1.] The documents Defendants already produced in the state court proceeding.

[2.] All documents concerning any negotiations, discussions, meetings, or communications with potential competing bidders for Pep Boys, including, but not limited to any agreements or discussions regarding exclusivity with any potential bidder including the Gores Group.

[3.] All documents concerning the vetting, engagement, or retention of any Advisor, the terms of such engagement or retention, and any business relationship history, conflicts of interest, or incentives involving such Advisor, including Merrill Lynch.

[4.] All documents received from any Advisor concerning the Advisor's evaluation or review of the Proposed Transaction, including, but not limited to the Fairness Opinion, Selected Publicly Traded Companies' Analysis, Selected Precedent Transaction Analysis, Discounted Cash Flow Analysis, and any and all "bankers books," and in particular, the final book/deck and underlying financials concerning the Proposed Transaction.

[5.] All documents underlying Merrill Lynch's Fairness Opinion concerning management's reliable projections and financial forecasts, including free cash flow, net revenue, net income, earnings per share, and EBITDA estimates, provided or prepared by Pep Boys senior management, the Board, or any other representative and/or strategic partner of the Company.

[6.] All documents concerning Pep Boys' real estate holdings and any appraisal of the value of Pep Boys' real estate portfolio, whether performed by Pep Boys representatives, Merrill Lynch or an independent appraiser.

[7.] All compensation arrangements regarding management in any newly formed entity, including all documents concerning change in control agreements or other payments that the Individual Defendants may receive pursuant to the Proposed Transaction.

[8.] The most recent Projections (especially if they differ from what was used in the final bankers' book) for Pep Boys and any pro forma projections concerning the newly formed entity that will survive the Proposed Transaction.

[9.] Depositions of:

[a.] The officer or employee from Merrill Lynch most knowledgeable with respect to the [P]roposed [T]ransaction;

[b.] The officer or employee of Pep Boys most knowledgeable regarding the Company's financial projections; and

[c.] The member of Pep Boys' Board of Directors most knowledgeable about the Proposed Transaction.

(Pls.' Mem. at 8-9.)

Plaintiffs challenge the proxy statements issued in connection with the Proposed Transaction, which they believe are materially false or misleading. Keeping "the nature of the underlying litigation" in mind, I conclude that discovery requests that are not limited in scope to evidence relevant to the Proposed Transaction and related proxies fail the particularity requirement. Document-request numbers 2, 3, and 6, contain no time limitations and are not limited in scope to documents concerning the Proposed Transaction. They are the kind of "overly broad or all-encompassing" requests that are not particularized within the meaning of 15 U.S.C. § 78u-4(b)(3)(B). *Heckmann*, 2010 U.S. Dist. LEXIS 141663, at *16. On the other hand, the scope of document-request numbers 4, 5, 7, and 8 is sufficiently limited by reference to the Proposed Transaction or Fairness Opinion to qualify as particularized discovery. I also find the depositions to be sufficiently particularized. *See Nichting*, 2011 U.S. Dist. LEXIS 76739, at *12. With respect to document-request number 1, I am aware that courts have differed as to whether a request for documents already produced in another proceeding is particularized. *Compare WorldCom*, 234 F. Supp. 2d at 306 (finding the particularity requirement met where plaintiffs sought "documents [that] WorldCom has already produced in connection with other identified proceedings"), *with Faulkner*, 156 F. Supp. 2d at 404 (finding that plaintiff's request of "all documents . . . that have been previously produced" was not sufficiently particularized). Given how recently discovery has been produced in the parallel state-court proceeding, I conclude that these documents ought to be readily identifiable and that plaintiffs' first document request is

particularized.

However, meeting the particularity requirement is not enough—plaintiffs must also establish unfair prejudice before I will lift the automatic stay. *See Spectranetics*, 2009 U.S. Dist. LEXIS 100748, at *29. Undue prejudice is "improper or unfair treatment amounting to something less than irreparable harm." *Sarantakis v. Gruttadauria*, No. 02-1609, 2002 U.S. Dist. LEXIS 14349, at *2 (N.D. Ill. Aug. 2, 2002). "Prejudice caused by the delay inherent in the PSLRA's discovery stay cannot be 'undue' prejudice because it is prejudice [that] is neither improper nor unfair." *In re CFS-Related Sec. Fraud Litig.*, 179 F. Supp. 2d 1260, 1265 (N.D. Okla. 2001); *see also Heckmann*, 2010 U.S. Dist. LEXIS 141663, at *4; *Ross v. Abercrombie & Fitch Co.*, No. 2:05-0819, 2006 U.S. Dist. LEXIS 72956, at *6-7 (S.D. Ohio Oct. 5, 2006).

Plaintiffs argue that absent expedited discovery, "the documents requested will not be reviewed before the vote [that is scheduled for May 30, 2012,] is consummated, irreparably harming plaintiffs." (Pls.' Mem. at 15.) They rely on *Woodward & Lothrop, Inc. v. Schnabel*, 593 F. Supp. 1385 (D.D.C. 1984), for support. In *Woodward*, the district court granted a temporary restraining order where it concluded that "proceeding with the [shareholder] vote would itself cause an irreparable injury to the shareholders who would be compelled to make a vital investment decision based on incomplete and materially misleading information." *Id.* at 1394. Because undue prejudice requires something less than irreparable harm, plaintiffs reason that a showing of irreparable harm necessarily establishes undue prejudice.[6]

Plaintiffs' reliance on *Woodward* is misplaced. As defendants point out, *Woodward*

---

[6] Plaintiffs seek discovery in order to prepare a motion for a preliminary injunction that they anticipate filing. But if this were a proper basis for a finding of undue prejudice, it would apply in every securities-fraud action and the statutory exception would swallow the rule.

predates the PSLRA by eleven years and "plainly was not interpreting the PSLRA." (Defs.'

Opp'n at 12 n.7.) While another district court has incorporated the reasoning of *Woodward* into

its automatic-stay analysis, *see Ryan v. Walton*, 2010 U.S. Dist. LEXIS 108618 (D.D.C. Mar. 9,

2010), I will not do the same. Indeed, *Woodward* is particularly inapt to the automatic-stay

analysis because the court's conclusion that a misinformed shareholder vote constituted

irreparable harm followed its determination that plaintiffs had made a substantial showing of

likelihood that they would prevail on the merits of their Exchange Act claim. 593 F. Supp. at

1394. Congress enacted the PSLRA automatic-stay provision to protect "defendants from

financially burdensome fishing expeditions until the sufficiency of the primary complaint ha[d]

been tested [by a motion to dismiss]." *In re Carnegie Int'l Corp. Sec. Litig.*, 107 F. Supp. 2d 676,

680 (D. Md. 2000). To be sure, the standards governing temporary restraining orders and motions

to dismiss are different. Nevertheless, both involve some judicial screening of the sufficiency of a

plaintiff's claims. There has been no such judicial screening of plaintiffs' claims here. Thus, it

would seem perverse to allow plaintiffs to circumvent the PSLRA's requirement that I test the

sufficiency of their Exchange Act claims before allowing burdensome discovery, on the basis of

a pre-PSLRA case testing the merits of an Exchange Act claim.[7]

---

[7] Plaintiffs also cite *Woodward* for the proposition that "post-consummation relief from the consequences of a premature and uninformed vote would be inadequate." (Pls.' Mem. at 16.) "Stays of discovery can be lifted if leaving the stay in place would prevent the plaintiff from obtaining relief in *any* form." *Fisher v. Kanas*, No. 06-1187, 2006 U.S. Dist. LEXIS 54563, at *8 (E.D.N.Y. Aug. 4, 2006) (emphasis added). For example, a district court decided that the unusual circumstances presented by *Global Intellicom, Inc. v. Thomson Kernaghan & Co.*, No. 99-342, 1999 U.S. Dist. LEXIS 5439, at *1-4 (S.D.N.Y. Apr. 15, 1999), merited a reprieve from the PSLRA automatic stay. In *Global Intellicom*, the defendants, who were accused of illegally short-selling plaintiff's stock, were taking steps to assume control of plaintiff's board, thus raising the possibility that if the defendants succeeded in their bid for control they would prevent the plaintiff from seeking redress for their alleged wrongdoing. *Id. Global Intellicom* thus bears little

Next, plaintiffs argue that they will suffer undue prejudice unless the stay is lifted because discovery has commenced in the parallel state-court action and thus the automatic stay "could limit their chance of recovery"—a concern that they note "will be even more pronounced if settlement negotiations begin in the state[-]court proceeding." (Pls.' Mem at 16.)

"Some courts have found prejudice to plaintiffs where the 15 U.S.C. § 78u-4(b)(3)(B) stay puts plaintiffs advancing claims under the Exchange Act at an informational disadvantage relative to plaintiffs asserting different claims or government investigators." *Marvell*, 2007 U.S. Dist. LEXIS 41268, at *8-9 (collecting cases). However, many of these cases are distinguishable because they involve unique circumstances not presented here. *See, e.g.*, *Royal Ahold*, 220 F.R.D. at 250 (granting motion to lift PSLRA discovery stay as to a defendant who was divesting assets); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, No. 02-1335-B, 2003 U.S. Dist. LEXIS 28001, at *11 (D.N.H. Jan. 29, 2003) (granting discovery requests in a consolidated multidistrict litigation involving securities actions, ERISA actions, and derivative actions where "keeping all parties on an equal footing with respect to discovery serves important case management interests in this complex litigation"); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, No. 01-3624, 2002 U.S. Dist. LEXIS 26261, at *1 (S.D. Tex. Aug. 15, 2002) (lifting an automatic stay where defendant had filed for bankruptcy); *WorldCom*, 234 F. Supp. 2d at 305-306 (granting reprieve

---

resemblance to the matter before me.

Plaintiffs do not argue that "post-consummation relief" will be unavailable to them—in fact, the consolidated complaint anticipates the possibility of the Proposed Transaction closing and requests "rescissory damages" as an alternative form of relief. (Consolidated Compl. at 25.) Plaintiffs' argument essentially boils down to the complaint that delay may make their preferred remedy unavailable. This does not establish undue prejudice such as where the stay would prevent "relief in *any* form." *Fisher*, 2006 U.S. Dist. LEXIS 54563, at *7 (emphasis added).

from a discovery stay where defendant had filed for bankruptcy and global settlement was imminent).

Many other courts, including at least one court in this circuit, have concluded that an informational disadvantage does not rise to the level of undue prejudice contemplated by the narrow statutory exception in 15 U.S.C. § 78u-4(b)(3)(B). *See, e.g.*, *In re Schering-Plough Corp.*, No. 08-397, 2009 U.S. Dist. LEXIS 43665, at *4-6 (D.N.J. May 22, 2009); *In re Guidant Corp. Sec. Litig.*, No. 05-1658, 2007 U.S. Dist. LEXIS 25733, at *4 (S.D. Ind. Mar. 30, 2007); *In re Fannie Mae Sec. Litig.*, 362 F. Supp. 2d 37, 39 (D.D.C. 2005); *In re Odyssey Healthcare, Inc. Sec. Litig.*, No. 3:04-0844, 2005 U.S. Dist. LEXIS 43554, at *4-6 (N.D. Tex. June 10, 2005); *In re AOL Time Warner Sec. & ERISA Litig.*, No. 1500-02-5575, 2003 U.S. Dist. LEXIS 12846, at *6 (S.D.N.Y. July 21, 2003); *In re Vivendi Universal, S.A. Sec. Litig.*, 381 F. Supp. 2d 129, 130-31 (S.D.N.Y. 2003). I find the reasoning of these cases particularly persuasive here, where two of the three plaintiffs were initially involved in the state-court proceeding to which they now claim to be at a relative disadvantage. Any strategic disadvantage occasioned by the automatic stay is a consequence of plaintiffs' strategic choice to proceed under the Exchange Act.

Furthermore, I note my fundamental disagreement with the premise of plaintiffs' argument. "Whether PSLRA plaintiffs should be subjected to a discovery stay while other parties, who are bringing claims under other causes of action, are not subjected to a stay is a question for Congress, and one that Congress has answered." *In re Refco, Inc. Sec. Litig.*, No. 05-8626, 2006 U.S. Dist. LEXIS 55639, at *6 (S.D.N.Y. Aug. 8, 2006). The PSLRA automatic stay "does not apply to government investigations, bankruptcy proceedings, internal investigations, or non-PSLRA actions." *Id.* at *6-7. This incongruity "is not evidence of undue prejudice, but rather

11

is evidence of Congress's judgment that PSLRA actions should be treated differently than other actions." *Id*. at *7. I will not question that judgment.

**III.    Conclusion**

In sum, I conclude that the PSLRA automatically stays discovery in this action during the pendency of the motion to dismiss. Because plaintiffs have failed to show that the stay will cause them undue prejudice, I cannot lift the stay. Therefore, I will deny plaintiffs' motion for expedited discovery. An appropriate order follows.